4 CIT ES   Case 1:18-cv-00843-RGA   Document 1-4   Filed 03/21/18   Page 1 of 13 PageID #: 28

FILED
DALLAS COUNTY
3/1/2018 2:27 PM
FELICIA PITRE
DISTRICT CLERK

Manuel Rodriguez

DC-18-02836

CAUSE NO. _____

| | | |
|---|---|---|
| **I3 BRANDS, INC., AND PARTPROTECTION, LLC,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs*, | § § | |
| v. | § § | \_\_\_\_ **JUDICIAL DISTRICT** |
| **C&K AUTO PARTS, LLC, JOSH WISHNAK, RICHARD A. MORRIS, JR., AND MULBERRY INVESTMENT GROUP, LLC,** | § § § § § § | |
| *Defendants*. | § | **DALLAS COUNTY, TEXAS** |

## PLAINTIFFS' VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

Plaintiffs i3 Brands, Inc. and PartProtection, LLC (collectively "Plaintiffs") files this Verified Original Petition and Application for Temporary and Permanent Injunction against Defendants C&K Auto Parts, LLC, Josh Wishnak, Richard A. Morris, Jr., and Mulberry Investment Group, LLC (collectively "Defendants"). In support thereof, Plaintiffs respectfully shows the Court the following:

### I.   DISCOVERY LEVEL AND RULE 47 STATEMENT

1. Plaintiffs plead for discovery under Level 3, pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.4. Plaintiffs seek damages in an amount within the jurisdictional limits of this Court. More specifically, Plaintiffs seek monetary relief of more than $1,000,000 and non-monetary relief.

### II.   PARTIES

2. Plaintiff **i3 Brands, Inc.** ("i3 Brands") is a corporation authorized to conduct business in the state of Texas with its principal place of business located in California at 2196 Carmel Valley Road, Del Mar, California 92014.

3. Plaintiff **PartProtection, LLC** ("PartProtection") is a limited liability company organized under the laws of the state of Delaware.

4. Defendant **C&K Auto Parts, LLC** ("C&K") is a limited liability company organized in the state of Virginia that can be served with process by serving its Registered Agent Mulberry Investment Group, LLC at, 9011 Arboretum Pkwy, Suite 155, Richmond, VA 23236, or wherever it may be found.

5. Defendant **Josh Wishnak** ("Wishnak") is an individual that can be served with process at 9011 Arboretum Pkwy, Suite 155, Richmond, VA 23236, or wherever he may be found.

6. Defendant **Richard A. Morris, Jr.** ("Morris") is an individual that can be served with process at 9011 Arboretum Pkwy, Suite 155, Richmond, VA 23236, or wherever he may be found.

7. Defendant **Mulberry Investment Group, LLC** ("Mulberry") is a limited liability company organized in the state of Virginia that can be served with process by serving its Registered Agent, Richard A. Morris, Jr. at 9011 Arboretum Pkwy, Suite 155, Richmond, VA 23236, or wherever he may be found.

### III.  JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter herein as the amount in controversy is within the jurisdictional limits of the Court, and personal jurisdiction over Defendants as Defendants regularly conduct business in the state of Texas and specific improper conduct made a subject of this suit occurred in the state of Texas.  Venue is proper in Dallas County, Texas pursuant to §15.002(a) of the Texas Civil Practices & Remedies Code.

## IV. STATEMENT OF FACTS

9. Plaintiff i3 Brands is a technology-based corporation that provides software and data-driven solutions for major manufacturing clients in several industries, including the automotive industry, to bolster customer company sales, improve efficiencies, and increase customer engagement. Plaintiff markets and sells its uniquely developed products and services directly to clients located throughout the country.

10. Plaintiff i3 Brands (by and through Trademotion, LLC) was a founding Member of Plaintiff PartProtection. Defendant C&K was previously a Member of PartProtection. In 2017, Plaintiff acquired the 50% interest in PartProtection owned by C&K.

11. As part of its business, Plaintiffs developed, in material part, certain code and other proprietary data relating to Original Equipment Manufacturer or "OEM" pricing of automotive parts.

12. In 2017, Plaintiffs communicated with an employee of C&K that had been specifically assigned by C&K to the PartProtection software platforms.

13. Through these communications it was discovered that C&K had obtained knowledge of the functionality of the Plaintiffs' "CheckOEMParts" Application Program Interface, or API, which was utilized by PartProtection.

14. More specifically, it was revealed that C&K had created, for its own benefit and use, an application that used the CheckOEMParts API to obtain pricing and OEM part data for automotive parts. Plaintiffs' proprietary CheckOEMParts API had been copied and used by C&K for its own online software application and business development purposes.

15. During these communications with the C&K employee, it was further revealed to Plaintiffs that an emergency meeting was held at the offices of C&K to manage a crisis relating to their internal pricing, OEM parts data and related systems being down.

16. Plaintiffs were informed that Defendants Josh Wishnack and Richard A. Morris, Jr., both executives with C&K, were part of this meeting. Plaintiffs were told that at this crisis meeting, Defendants decided to covertly develop their own parts pricing application using Plaintiffs' proprietary API while simultaneously removing Plaintiffs from the pricing and OEM parts data applications.

17. Separately, and further revealing Defendants improper conduct, a data anomaly was discovered by Plaintiffs in which there was an unusually high rate of data queries found on Plaintiffs' servers. This web traffic identified by Plaintiffs was abnormal and did not correlate to the number of policies being sold within PartProtection. Upon inquiry by Plaintiffs, C&K informed Plaintiffs that it's 'part lookup' system was not operating at that time, essentially confirming the misappropriation.

18. As agreed upon in the PartProtection Operating Agreement entered into by Defendant C&K, the confidential information and data was property of PartProtection and not to be used outside of PartProtection, and C&K was not to compete against Plaintiffs. The Operating Agreement specifically states, in pertinent part:

> 13.1 **Non-Compete Provisions**. During the term of this Agreement, and with respect to a Member, for a period of two (2) years following the date such Person ceases to be a Member, the Company and each Member agrees neither it nor any of its direct or indirect owners or affiliates will, directly or indirectly, engage or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing or control of, be employed by, or render advice or other aid to, or guarantee any obligation of, any person engaged in or planning to become engaged in any business whose products or activities compete in whole or in part anywhere in the world with the business of the Company […]'
>
> **13.2   The Company will not license, sell or appoint as a reseller any of its products to a company that competes directly with TradeMotion or CKAUTO without the prior unanimous consent of the Partners Committee. Every Dealer Management System ("DMS") company to**

> **become involved with the Company will be pre-approved in writing by the majority of the Partners Committee prior to any agreement therewith, license, and/or integration.**'
>
> 14.10   "... All Confidential Information shall be and remain at all times the exclusive property of the Company… The Members agree and covenant that they will not directly or indirectly disclose the Confidential Information to any Person of any kind whatsoever."

19.   Plaintiffs did not consent, or otherwise agree, to permit C&K to use the confidential data and source code.

20.   Furthermore, EFG Companies ("EFG"), a Dallas, Texas based company, maintains a technology product known as "Parts Wizard", which is known to have been developed with the assistance of key developers and employees of C&K.

21.   EFG is also known to be a large client of C&K.

22.   EFG has also contracted with another third-party company to make "Parts Wizard" on their behalf.  The competitive Parts Wizard application allows for negotiation with service centers outside of dealerships by providing better pricing from vendors already used and trusted.

23.   Moreover, it is believed Defendants misappropriation of Plaintiffs' property and confidential information extends well beyond EFG, and has been used for the benefit of Defendants and other customers.

24.   The subject misappropriation of Plaintiffs' property and confidential information has also been used by and between Defendants C&K and Mulberry for their direct benefit to consummate recent corporate transactions between the parties.

25.   Defendants have conspired to access and use confidential information of Plaintiff to interfere with Plaintiffs' customers and business, for the benefit of Defendants and /or their respective customers in Texas and throughout the United States, and in an attempt to solicit

companies away from conducting business with Plaintiffs. Defendants have, without authorization, improperly shared confidential data and business information of Plaintiffs with third parties.

26. As a result of Defendants' actions, Plaintiffs have suffered, and continues to suffer, severe injury to its reputation and good will as well as economic damages. Plaintiffs further seek disgorgement of all profits Defendants earned while improperly accessing, transferring, and using Plaintiffs' data. Additionally, due to Defendants' wrongful conduct, Plaintiffs seeks the Court enjoin Defendants from further harming Plaintiffs and award Plaintiffs all damages related to the improper conduct of Defendants made a subject of this suit.

## V. CAUSES OF ACTION

27. The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full:

### COUNT 1 – BREACH OF OPERATING AGREEMENT

28. Defendant C&K entered into an Operating Agreement relating to PartProtection and, in pertinent part, the protection of property and confidential information of Plaintiffs, and concerning the non-competition by C&K with respect to Plaintiffs.

29. Plaintiffs performed its obligations under the Agreement. As identified in part above, Defendant C&K has breached its contractual duties owed to Plaintiffs under the Agreement.

30. As a result of the breaches, Plaintiffs have suffered economic harm, and will continue to suffer actual damage or loss, including lost profits, loss of good will, harm to customer relationships, and loss of future contracts and business prospects, for which Defendants are liable.

**COUNT 2 – MISAPPROPRIATION OF TRADE SECRETS, TEXAS UNIFORM TRADE SECRETS ACT**

31. Plaintiffs have a possessory right to its trade secret and confidential information.

32. Defendants wrongfully acquired access to this information and used such information for their direct benefit. Specifically, Defendants have been found to be actively using and/or disseminating Plaintiffs' proprietary information in order to directly compete with Plaintiffs and/or to gain a business advantage for themselves and usurp business opportunities belonging to Plaintiffs.

33. Defendants misappropriated Plaintiffs' property and confidential information by using and/or disclosing it without Plaintiffs' consent even though Defendants knew at the time that the information was acquired under unlawful or otherwise confidential circumstances.

34. This is protected trade secret information from which Plaintiffs receive economic value. It is not generally known, and Plaintiffs have taken reasonable efforts to maintain its secrecy. The trade secret information was misappropriated as defined by the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.002(3), when Defendants used it to gain an advantage and steal and/or usurp business opportunities from Plaintiffs. As a result of this misappropriation, Plaintiffs have lost business opportunities and suffered harm.

35. Plaintiffs contend the subject property and confidential information was misappropriated willfully and maliciously by Defendants. As a proximate result of such willful and malicious action, Plaintiffs have suffered, and will continue to suffer, actual damages or loss, including loss of good will, harm to customer relationship, and loss of future contracts and business prospects, for which Defendants are jointly and severally liable.

**COUNT 3 – CONSPIRACY**

36. Defendants were members of a combination of two or more persons. The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful

means including interfering with Plaintiffs' customers and contracts, misappropriating Plaintiffs' trade secrets, and defrauding Plaintiffs.

37. Defendants had a meeting of the minds on the object or course of action, and one or more of them committed an unlawful, overt act to further the object or course of action.

38. Defendants may have had further assistance concerning the above-referenced conduct, including assistance from other persons and companies to assist Defendants in their wrongful actions, and Plaintiffs will amend this petition as appropriate as discovery and further investigation is completed.

39. Plaintiffs have suffered damages as a proximate result of Defendants wrongful acts, including but not limited to lost profits, loss of customers and loss of future business opportunities and goodwill.

## VI.   REQUEST FOR DISCLOSURE

40. With the filing of this Original Petition and Application for Temporary Injunction and Permanent Injunction, Plaintiffs makes a request for disclosure to Defendants pursuant to Tex. R. Civ. P. 194.

## VII.   APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

41. The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full:

42. Plaintiffs' Application for Temporary Injunction is authorized by Texas Civil Practice and Remedies Code Section 65.011(2), (3), and (5).

43. Plaintiffs are likely to suffer permanent and irreparable harm if an injunction is not entered. There is no other adequate remedy at law and Plaintiffs seeks the equitable intervention of this Court.

44. For the reasons stated in this Petition, Plaintiffs requests the Court issue a Temporary Injunction enjoining the conduct outlined in the preceding paragraphs.

45. **Conduct to be Restrained.** In order to preserve the status quo pending the final trial on the merits of this case, Plaintiffs asks this Court to issue a Temporary Injunction to restrain and enjoin Defendants, their respective agents, attorneys, servants, representatives, affiliates, entities, successors, and assigns, and any and all other persons and entities under his control and/or direction, or acting in active concert and participation with Defendants, from engaging in any of the following:

   a. Directly or indirectly disclosing or otherwise using any property and confidential and/or proprietary information of Plaintiffs;

   b. Directly or indirectly accessing, transferring, downloading, or otherwise using any of Plaintiffs' trade secrets, confidential and/or proprietary information;

   c. Directly or indirectly using, downloading, transferring, or disclosing, to any person or entity, any information Defendants acquired from accessing Plaintiffs' computer(s), email servers/accounts, servers, or other electronic devices; and

   d. Taking any action which would impair or diminish the value of Plaintiffs' property, assets, intellectual property, trade secrets or other confidential or proprietary information.

46. **Plaintiff is Likely to Succeed on the Merits.** Plaintiffs have a probable right to relief upon final hearing. In particular, Plaintiffs will present evidence of Defendants breach of contract, misappropriation of trade secrets, tortious interference with contracts, as well as evidence concerning the causation and extent of Plaintiffs' damages.

47. **Harm to Plaintiffs is Imminent and Irreparable.** Harm to Plaintiffs is imminent and irreparable. Defendants' conduct is ongoing, and has caused and will continue to cause irreparable harm to Plaintiffs. The damage to Plaintiffs' reputation and that of his products, as well as the continuing disruption caused by Defendants to Plaintiffs' business and assets is immeasurable. Moreover, so long as Defendants' conduct continues, it will be impossible to identify the extent of the harm to Plaintiffs and quantify Plaintiffs' damages.

48. It is well-settled that injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets. *Rugen v. Interactive Bus. Sys., Inc.* 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ) (an injunction is appropriate when necessary to prohibit a former employee from using confidential information to solicit his former employer's clients).

49. **No Adequate Remedy at Law.** In the absence of injunctive relief, Plaintiffs has no adequate remedy at law. It is essential that the Court immediately restrain Defendants from continuing the conduct described herein. Plaintiffs are willing to post a bond in connection with any temporary injunction, if required by the Court, in accordance with Texas Rule of Civil Procedure 684.

50. **Hearing.** In compliance with the Texas Rules of Civil Procedure, Plaintiffs are entitled to a hearing providing the relief requested above to give them an opportunity to be heard by the Court. Plaintiffs request that the Court set a hearing to consider whether temporary injunctive relief should be granted pending a trial on the merits.

51. **Permanent Injunctive Relief.** Plaintiffs further plead for a permanent injunction, enjoining Defendants from engaging in the above acts, following a trial of this cause.

## VIII.   CONDITIONS PRECEDENT

52. All conditions precedent to Plaintiffs' right to bring the above causes of action, and for recovery requested herein, have been performed or otherwise already occurred.

## IX.   EXEMPLARY DAMAGES

53.    Plaintiffs are entitled to exemplary damages for Defendants' intentional conduct, and because such acts were committed with that level of mental culpability for which Texas law allows a jury to impose punitive damages, and Plaintiffs seek an award of such damages.

## X. ATTORNEY FEES

54.    Plaintiffs seek the recovery of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001 and 134A.005(3).

## XI.   PRAYER

55.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs requests Defendants be cited to appear and answer, and that upon final hearing, Plaintiffs have the following:

(1) A Temporary Injunction and Permanent Injunction be issued enjoining Defendants, and their respective agents, servants, entities and employees from the conduct described herein;

(2) Plaintiffs be granted judgment against Defendants for disgorgement of all profits, and damages within the jurisdictional limits of this Court;

(3) Plaintiffs be granted judgment against Defendants for exemplary damages within the jurisdictional limits of this Court;

(4) Plaintiffs be granted judgment against Defendants for reasonable and necessary attorneys' fees, costs of suit, pre- and post-judgment interest; and

(5) Plaintiffs be granted such other relief, at law or in equity, as is just and proper.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By: /s/ Mark L. Hill

    **MARK L. HILL**
    State Bar No. 24034868
    mark.hill@solidcounsel.com

    **ANNA S. BROOKS**
    State Bar No. 24074147
    anna.brooks@solidcounsel.com

2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Facsimile

***ATTORNEYS FOR PLAINTIFF
I3 BRANDS, INC.***

## VERIFICATION

STATE OF CALIFORNIA § § §
COUNTY OF San Diego §

    Before me, the undersigned Notary Public, on this day personally appeared Michael T. Lucas, who, after being duly sworn, stated under oath that he is the Chief Executive Officer of Plaintiff in this action, that he has read the Plaintiff's Verified Original Petition and Application for Temporary Injunction and Permanent Injunction (the "Application"), that he is authorized to make this verification and apply for injunctive relief and that every statement of fact contained in the Application is within his personal knowledge and is true and correct.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Michael T. Lucas

    **SUBSCRIBED AND SWORN TO BEFORE ME** on the __27__ day of February, 2018, to certify which witness my hand and official seal.

JEFF DEWITT
Commission # 2102702
Notary Public - California
Sacramento County
My Comm. Expires Apr 6, 2019

Notary Public for the State of California